971 So.2d 298 (2008)
Anthony TEDFORD, Appellant,
v.
STATE of Florida, Appellee.
No. 4D06-1936.
District Court of Appeal of Florida, Fourth District.
January 16, 2008.
Rehearing Denied January 16, 2008.
*299 Carey Haughwout, Public Defender, and John M. Conway, Assistant Public Defender, West Palm Beach, for appellant.
Bill McCollum, Attorney General, Tallahassee, and Melynda L. Melear, Assistant Attorney General, West Palm Beach, for appellee.

ON MOTION FOR REHEARING
STONE, J.
We deny Tedford's motion for rehearing, but withdraw our opinion of November 7, 2007, and substitute the following in its place.
Tedford was convicted of manslaughter with a firearm and sentenced to life in prison. He contends that the trial court erred by denying his motion for judgment of acquittal.
Tedford was living with his fiancée, Payton Andrews, and her two daughters, in an apartment. He came home around 4 a.m. after partying at a night club. There is evidence indicating that the couple began arguing in the living room. Tedford hit Andrews, who then lay down on the couch, covering her face and crying, as Tedford went to the couple's bedroom to retrieve a shotgun. Returning to the living room, Tedford, who is six feet three inches tall, shot Andrews, who was five-five, in the right ear. He then tried to dispose of the gun and of the victim, by dragging her body out of the house and into his car.
Andrews' oldest daughter, K.A.[1], testified that the argument between Tedford and Andrews had awakened her. Looking out into the living room, she heard Tedford accusing her mother of receiving new clothes from another man. Tedford remarked that he should have never been with Andrews, with Andrews replying "it's not over." K.A. then witnessed Tedford hitting Andrews three to four times and walking out and into his room, leaving Andrews lying on her left side, with her hands over her face, crying on the couch. K.A. retreated to the room she shared with her sister. A few minutes later, K.A. heard the shot. K.A. saw Tedford drag Andrews to his car and then return to the house where she heard him speaking into his cell phone that "someone shot my wife."
Tedford's neighbor found the shotgun in a bush near the apartment. A forensic pathologist estimated that the shotgun barrel was approximately three-fourths of an inch from Andrews' right ear when it fired. The shotgun pellet entered from right to left, slightly from the front to the back, and in the downward direction, which "[m]eans from . . . head to . . . feet." Examining Andrews' hands and forearms, the pathologist did not see any bruises, cuts, or abrasions.
*300 Also, a firearms and fingerprint expert testified about the shotgun and its functioning safety mechanism which prevents the cocked shotgun from firing when dropped or hit with an object. The expert stated that the shotgun requires between five to five and half pounds of pressure to pull the trigger.
During Tedford's case in chief, Tedford recounted his version of the events. Tedford testified that, after a confrontation, he went to his room and grabbed his car keys because he wanted to get cigarettes from his car. As he was walking toward the front door, Andrews was standing in front of the couch, with a gun in her hand, that she cocked and began raising. Grabbing the gun, Tedford attempted to pry it out of her hands. He succeeded in pulling up the gun out of one of Andrews' hands, but she held on with the other hand, with her finger on the trigger.
Tedford testified that he dragged her out to the car because he wanted to take Andrews to the hospital, but she was too heavy. He then went back to the house, called the police from his phone, and threw the gun in the neighbor's yard. On direct examination, Tedford's counsel asked Tedford to explain statements he made to police:
Q. Now what you told the police that night, was that what actually happened?
A. No, sir.
Q. Okay. Why is that not what happened?
A. Because we got into a little scuffle, it wouldn't have went well.
Q. Well, I think my question to you was, why did you not tell them what you told the jury today?
A. Because I was scared.
Q. Okay. Why were you scared?
A. I was a convicted felon.
On cross-examination, Tedford admitted that he lied when he told the 911 operator that someone just shot his wife. Tedford also testified that he does not recall whether he told police detectives that he found Andrews dead when he came home from the club. The state then examined Tedford about the statement he made to police, the statement which Tedford testified on direct was false. He acknowledged failing to tell the detectives that Andrews pushed him or pointed the cocked shotgun at him.
We recognize that this is essentially a conviction based on circumstantial evidence. As such, the circumstantial evidence must be "inconsistent with any reasonable hypothesis of innocence." Reynolds v. State, 934 So.2d 1128, 1145 (Fla. 2006) (quoting Darling v. State, 808 So.2d 145, 155 (Fla.2002)). To meet its burden, the state must introduce competent evidence "inconsistent with the defendant's theory of events." Romero v. State, 901 So.2d 260, 264 (Fla. 4th DCA 2005); see also State v. Law, 559 So.2d 187, 189 (Fla.1989). Once the state meets this burden, the jury resolves whether the evidence is sufficient to exclude every reasonable hypothesis of innocence.
Florida Rule of Criminal Procedure 3.380(b) mandates that a motion for judgment of acquittal "fully set forth the grounds on which it is based." A boilerplate motion is insufficient. Although we question whether Tedford's motions for judgment of acquittal presented sufficient specificity to support review, the state does not raise this point on appeal. In any event, upon consideration of the merits, we affirm.
In State v. Powell, 636 So.2d 138, 143 (Fla. 1st DCA 1994), the state charged Powell with first-degree murder of his girlfriend. The court held that the state met its burden to produce evidence inconsistent *301 with the defense that the shooting was an accident or was self-defense. Powell's version of events was that the victim pulled out his gun, which he tried to grab, and during the struggle, as the victim started falling backwards, the gun went off.
The state's evidence included a pathologist who testified that he did not observe any defensive wounds on the victim, that "despite the fact that the victim was a large woman and the living quarters were rather small, there was no evidence of a struggle," and evidence that "the only position the victim could have been in when she was shot was standing," which contradicted Powell's claim that "the gun fired when the victim was falling backwards." The Powell court, thus, concluded that "the jury could reasonably have rejected" Powell's version of events. Id. at 144.
We have considered Fowler v. State, 492 So.2d 1344 (Fla. 1st DCA 1986), where the First District found insufficient circumstantial evidence of first-degree felony murder and armed robbery, but deem it distinguishable. In Fowler, there was no evidence of conflicting stories or other evidence conflicting with the defense theory.
Here, Tedford repeatedly changed his version of events, and his testimony is inconsistent with much of the context of the homicide as furnished by K.A. and the forensics expert. Additionally, the bullet entered Andrews' right ear at a downward direction, which is inconsistent with Tedford's version that he was pulling the gun up when it fired.
Further, there was no evidence of a struggle and no defensive marks on Andrews. The state also presented the testimony of K.A. as to the sequence of events, and the firearms expert. The state's evidence supports the state's theory that Tedford was standing when he shot Andrews who was lying on her left side, on the couch. Therefore, the jury reasonably could have rejected Tedford's version of events.
As to the other issues raised on appeal, we also find no reversible error or abuse of discretion. Therefore, the judgment and sentence are affirmed.
STEVENSON and HAZOURI, JJ., concur.
NOTES
[1] K.A. was eleven at the time of the incident and thirteen when she testified at trial.